**THOMAS, Plaintiff-Appellee v. F. & R. LAZARUS & COMPANY,.
Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 3132. Decided January 17, 1941.

30

Carrington T. Marshall, Columbus, L. DeWitt Agler, for plaintiff-appellee.

Wilson & Rector, Columbus, for defendant-appellant.

## OPINION

By HORNBECK, P. J.

This is an appeal from a judgment for $3000.00 in behalf of plaintiff and against defendant-appellant in an action for damages.

The action originally proceeded upon two causes, first, for false imprisonment; the other for malicious prosecution against appellant, The Columbus Stores Mutual Protective Association and John J. Triska. The judgment was entered against all of them. This is the appeal prosecuted by The F. & R. Lazarus & Company. Defendant admitted the preferment of the charge against the plaintiff, its prosecution and her acquittal, averred that defendant had probable cause both for the arrest of plaintiff and for her prosecution, and that no unreasonable time elapsed between the time when she was apprehended and the time that a charge was preferred against her and denied that she had suffered any damages whatever.

The errors assigned are numerous.

Before we give consideration to the specific errors set out we will state some of the material facts as developed in the record. In June, 1938, the plaintiff went to the business offices of the appellant and there, upon one of the forms provided for the patrons of appellant, drew a check in the sum of $10.00 on the Pomeroy National Bank, Pomeroy, Ohio, payable to appellant and signed by the plaintiff. Plaintiff presented the check at one of the windows, whereupon the young woman in charge requested the plaintiff to wait a minute and turned the check over to the manager for his attention. The cashier stepped to the window, asked plaintiff to wait a while and called Mr. Enright, manager of the office, who, it is claimed, called the Pomeroy National Bank by telephone, made inquiry whether plaintiff had an account or funds in the bank and received the answer that she had not.

It was the claim of the appellant that plaintiff's appearance at the time she presented the check was so unkempt as to attract the unfavorable attention of the employee at the check window. This was denied by plaintiff. At about the time the manager put in the call to the bank the house detective for defendant company, Harry Seltzer, was called and arrived almost simultaneously with the report from the bank. The manager, in the presence of the house detective and plaintiff, stated the result of his investigation, whereupon Seltzer asked her to go with him to his office in the rear of the first floor of the defendant company's store building, and at about the time that they arrived in the office a man by. the name of John J. Triska, manager of the Columbus Stores Mutual Protective Association, came to the office, having been called there by Mr. Seltzer.

After considerable interrogation of the plaintiff by Mr. Seltzer and Mr. Triska, the Columbus police department was called, a patrol wagon came to the Lazarus Company and two police officers took plaintiff through the store to the patrol

wagon and transported her to the city jail. She was held at the jail from 10:30 A. M. until after 5:00 o'clock P. M of the same day before any charge was preferred against her, and was not released until about 7:00 P. M. There is discrepancy in the testimony as to what plaintiff stated to the cashier, to Mr. Seltzer and to Mr. Triska respecting the payment of the check, but it is admitted by all that she said that the check would be paid if presented to the bank.

It is testified by the plaintiff that she had, on many occasions, cashed checks at the windows of appellant, drawn in the same manner as the check in question in this case. Appellant denies knowledge of the cashing of any such checks.

Appellant claims that after the plaintiff had gone to the office of the house detective of the appellant, he placed a telephone call to the Pomeroy National Bank to inquire whether or not any arrangement had been made between the bank and plaintiff's former husband whereby such a check as was issued by her would be paid and that the bank informed Seltzer that no such arrangement had been made. The plaintiff denies that any such telephone conversation was had. It is admitted that she was in the presence of Mr. Seltzer and Mr. Triska at all times during the period that she was at the office of Mr. Seltzer. There is also discrepancy as to what was said by Mr. Seltzer at the time that it is claimed the second telephone call was placed.

At the time that the plantiff was taken to the city jail she was slated as having been arrested upon the order of Seltzer and Triska and held for investigation. Plaintiff claims that a request to call her mother by telephone, made at the time that she was in the office of the house detective of appellant, was refused but that she used the 'phone notwithstanding and called her mother. Plaintiff also claims that she was not permitted to make contact with any one for several hours after she was incarcerated in the city jail, but that finally after there had been a change of matrons she was permitted to call her mother and an attorney. The attorney immediately began an effort with Triska to cause plaintiff to be released or that a charge be preferred against her and finally after arrangements had been made for bond Triska preferred a charge against plaintiff and filed an affidavit the day after her arrest for "uttering and delivering a check in the sum of ten dollars ($10.00) without sufficient funds or credit with the bank upon which issued, to pay said check, with the intent to defraud the F. & R. Lazarus & Company and that the payment of said check was refused by the Pomeroy National Bank."

The following morning plaintiff's case was called in the Municipal Court. She and Triska testified and plaintiff was

bound over to the grand jury. Thereafter, the grand jury returned an indictment against the plaintiff charging her with uttering and delivering a check upon the Pomeroy National Bank without sufficient funds or credit to pay said check and with the purpose of defrauding the F. & R. Lazarus & Company.

Thereafter the cause came on for trial. Plaintiff was acquitted.

Plaintiff instituted this action and upon issues drawn it was tried to judge and jury and verdict rendered in favor of plaintiff against the defendant in the sum of three thousand dollars ($3000.00) and after motion for new trial was overruled judgment was entered on the verdict.

Other pertinent facts will be developed as we take up the assignments of error.

The first error presented in the brief is assignment No. 6, in admitting in evidence plaintiff's exhibit C, a telegram.

On the morning following the filing of the affidavit against the plaintiff in Municipal Court by Triska the case came on for preliminary hearing. Mr. Agler, then counsel for plaintiff, had received the following telegram from Henson H. Thomas: "Pomeroy, Ohio, June 3, 1938. I gave Jewel Thomas authority to write check." Mr. Agler testifies that he made a determined effort to prevail on Mr. Triska to read this telegram or to give consideration to its contents, but states that he would do neither. The court admitted this telegram on behalf of plaintiff over the objection and exception of defendant, Lazarus Company, and it is urged that this was prejudicial error because the case had then been placed in the hands of the prosecutor; that Triska had no power to control the prosecution and that as it came after the filing of the affidavit it could have no application to the question of probable cause for the arrest or prosecution of the plaintiff.

We believe this view of the effect of the evidence is too narrow. It is true that the information which this telegram carried could have had no effect whatever upon the action of any of the defendants in the arrest of the plaintiff or the filing of the affidavit against her. But the subject matter of the telegram supported the claim which the plaintiff had consistently urged from the moment that the check was first questioned up to the time of the hearing in Municipal Court and at all times thereafter, viz., that she had no intent to defraud when she issued the check. Mr. Triska's refusal to even look at the telegram or consider its contents had probative effect on the question of his attitude and, if he represented the Lazarus Company, upon its attitude toward the prosecution of the plaintiff and was proper to be considered, not only as it

related to the cause of action of plaintiff for compensatory damages, but also upon the element of express malice.

Plaintiff cites **White v Tucker, 16 Oh St 468; Melanowski v Judy, 102 Oh St 153; Miles v Salisbury, 21 O. C. C. 333;** and **C. H. & D. Ry. Co. v Winnes, 25 O. C. C. (N. S.) 321.**

The germane proposition announced in all of these cases relates only to probable cause and to no other phase of this case. It was proper and relevant that plaintiff offer in her behalf not only the facts and circumstances existing at the time she was arrested and prior to the filing of the affidavit, but also at all times up to the disposition of the criminal charge against her. Of course, if the jury did not get beyond the question of probable cause this testimony would have been of no effect, but when and if probable cause was shown against the defendants, then it was appropriate that subsequent conduct of the defendants as the prosecution proceeded be developed and the jury given the advantage of all relevant matters that occurred incident thereto.

The next error assigned, and also carried under No. 6 is directed to the admission of plaintiff's Exhibit G, a letter written by counsel for plaintiff to the Lazarus Company of date June 27, 1938, which was written after the plaintiff had been bound over to the grand jury and before her trial in Common Pleas Court.

This letter, in our judgment, was admissible for the same reason as the telegram, namely, to show the relationship, conduct and attitude of the Lazarus Company toward the plaintiff during the time that her case was being prosecuted, in the light of the information which was brought to the attention of said company.

The next error assigned is under No. 7 and is directed to the refusal of the trial judge to admit defendant's Exhibit No. 5, which included paragraphs from the rules and regulations governing the Stores Mutual Protective Association of which Triska was the manager and with which the Lazarus Company has a contract for its services.

Paragraph No. 3, Rules and Regulations, reads:

"When a case is placed in the hands of the Stores Mutual the store has no further jurisdiction in the matter. This relieves the store and store owner of any responsibility in the conduct of the case."

Paragraph No. 6 reads,

"Disposition of all cases will be made in accordance with the best judgment of the officers in charge of the Stores Mutual," etc.

This testimony was offered in furtherance of the claim that the Lazarus Company had nothing whatever to do with the arrest or prosecution of plaintiff after Triska came onto the scene at the Lazarus Company. The trial judge held that these rules as between the immediate parties thereto might be effective, but that they could not bind the plaintiff who knew nothing about them, nor was it substantive proof of the ultimate issue of the true relationship between the parties which was required to be gleaned from the facts appearing and not from conclusions carried into rules and regulations adopted by the Protective Association. The rules and regulations are promulgated by the Protective Association only and can be nothing more than its conclusion of its obligation toward cases and matters that are turned over to it for attention. It was not proper on behalf of itself, because nothing more nor less than a self-serving declaration. It was not proper on behalf of Lazarus Company because it could not in any view of the subject matter therein bind the company nor fix its rights and by the same token it had no effect whatever on the rights of the plaintiff as they developed from the facts appearing in the case. It did not purport to be the contract between Lazarus and the Stores Mutual.

The next error assigned under No. 7, relates to the refusal of the trial judge to admit defendant's Exhibit No. 1, which was a copy of the Sunday Star, a newspaper published in the city of Columbus and having an extended circulation and which carried an article relating to an arrest of the plaintiff about which she had been interrogated on cross-examination.

The court properly refused to accept this exhibit

Next error assigned, under No. 6, is directed to the action of the court in admitting Exhibit B, a check in form similar to Exhibit A, the one under immediate consideration in the instant case, which plaintiff testified she had prepared, presented and had cashed at the Lazarus Company prior to the issuance of Exhibit A, and the further testimony of plaintiff that she had in as many as a dozen other instances presented checks,' in like form to Exhibits A and B, at the windows of the Lazarus Company, which had been cashed by them.

This testimony, in our judgment, was competent and relevant as tending to show, if true, that the Lazarus Company, through its employees, should have known that the plaintiff was not attempting to defraud the company when she presented Exhibit A. Of course, the jury had full right to believe that even if other checks had been presented, inasmuch as it appeared that the company kept no record of such checks,

that no employee remembered the plaintiff when she presented Exhibit A. This testimony was of some weight on the question of the good faith of the plaintiff in presenting the check and as a part of all the facts and circumstances which the Lazarus Company knew or should have known when they elected to apprehend the plaintiff. The Lazarus Company was properly permitted to show every fact which related in the slightest degree to the situation as it appeared to its employees when they refused to cash the check and caused the plaintiff to be arrested. All of this, of course, as it related to probable cause for the action which the Lazarus Company took under these facts. It was only appropriate that on the other side of the question the plaintiff should present the facts as she insisted they existed at the time that the Lazarus Company caused her to be apprehended and whether or not in fact it did have probable cause for her arrest or prosecution.

The next error relates to the admission of testimony of counsel for plaintiff with the assistant prosecutors in the office of the prosecuting attorney of Franklin county, in matters relating to the prosecution of the plaintiff.

This testimony was clearly competent for the one purpose, if for no other, of enabling the jury to fix the value of the services of the attorneys, to plaintiff, an element of her damages, if the jury found that she was entitled to damages.

The next error assigned, part of No. 6, is that the court erred in admitting testimony of the plaintiff that in April, prior to the issuance of the check in question, she had made application to the Lazarus Company for employment in its drug department and that probably, in July, after she had been indicted, but before she was tried, a Mr. Young, an employee of the Lazarus Company, called her and asked her to come to wrok for the company.

This testimony, if admissible, might have some weight upon the good faith of the Lazarus Company in urging in the trial of this cause that the plaintiff sustained a general bad reputation at the time that she presented the check, Exhibit A, for payment, inasmuch as it was willing to employ her after she had been indicted. It is urged by counsel for defendant that the purpose of the testimony was to raise an implication that the company was attempting to buy plaintiff off in her lawsuit. We are in some doubt if the testimony was admissible for any purpose because it was remote in probative effect, if it had any, but we are satisfied that its admission upon the whole record was not prejudicial to defendant.

The next assignment of error, under No. 8, and again urged under No. 9, relates to the charge of the court on exemplary

damages and to the claim that it was erroneous to permit any such damages to be considered or awarded against the Lazarus Company.

This presents the most difficult legal proposition found in any of the assignments of error and one with which we have had some difficulty. The court took the view and charged the jury that,

"A corporation is subject to action for malicious prosecution when a criminal suit is maliciously prosecuted by an agent acting for or on behalf of the corporation, and within the scope of its authority, without probable cause."

And further stated that actual malice on the part of the defendants must appear as distinguished from legal malice and, if such malice was found to be present and actuated the defendants in committing the wrongs complained of, and if the plaintiff had conducted herself in a reasonable manner, the jury might award punitive damages.

We revert to the record and that part thereof which relates to the authority under which Seltzer and Triska acted in the proceedings against the plaintiff and to some of the testimony upon which it is claimed the jury had the right to award punitive, as well as compensatory, damages against the defendants, including the Lazarus Company; this includes the subject of probable cause which is discussed at length in the briefs.

At the time that plaintiff rested, her counsel, in opening statement had said that "Mr. Seltzer was at the head of the police or detective department at the Lazarus Store and that his business is to protect the store against fraud and thievery and the like; that he called the Mutual Protective Association, as was his duty, and Mr. Triska came to Mr. Seltzer's office in the Lazarus Store and was there when plaintiff reached the office or shortly thereafter; that the Columbus Stores Mutual Protective Association Company is an organization made up of a membership of various stores in the city of Columbus, its intention being to protect the stores against bad checks, fraud, thievery and shoplifting and the like.

The articles of incorporation of the Columbus Stores Mutual Protective Association Company had been introduced, the purpose clause of which provided,

"Said corporation is formed for the purpose of protecting its subscribers against abuses in trade and for the investigation of fraudulent debtors, thieves, burglars, embezzlers, shoplifters and persons obtaining money, credit, property or merchandise by false pretenses, theft, embezzlement, bulglary or other unlawful means; and to do any and all things necessary or incident thereto."

Also the transactions as they occurred at the time of the presentation of the check and at the office of the Larazus Company. When the defendants had concluded their case it appeared from the testimony of Mr. Seltzer that the Columbus Stores Mutual Protective Association by contract with the F. & R. Lazarus & Company furnished service to said company for an annual payment of one thousand dollars ($1000.00) per year and it was inferable that all of the information was secured by Enright, Seltzer and Triska in the store of Lazarus Company upon which the arrest and prosecution of plaintiff were predicated.

Seltzer, house detective for appellant, admittedly the agent of Lazarus Company, as well as Triska, who was called to the Lazarus store by Seltzer, was an actor in restraining the plaintiff of her liberty and the jury could well have found, as the slate at the Municipal Court recited, that Seltzer, as well as Triska, was responsible for the police officers making the arrest of plaintiff. Triska filed the affidavit and clearly was responsible for the delay which ensued between the time that she was arrested and the time that a charge was preferred against her. The jury had the right to say whether or not under all the circumstances this delay was reasonable. Triska, as well as Seltzer, while yet in the Lazarus store, admittedly was told by the plaintiff the circumstances under which she claimed she wrote the check and the facts upon which she based her contention at all times, that it would be paid if presented to the bank and from which she insists that it must be determined defendants should have known that at no time did she intend to defraud the Lazarus Company. Plaintiff states that many times she was charged with lying, in the conversation with Triska and Seltzer; that they took possession of her pocketbook, rifled its contents, secured therefrom the name of an Abe Zeitsman and a list of persons who had been dancing pupils of the plaintiff; that each accused her of having this list for the purpose of passing bad checks in their names; that she was not permitted at the office of the Lazarus Company to communicate with any one and only did so when she, against the will of Triska and Seltzer, used the 'phone in the office. All of this occurred before she was taken to the jail.

Triska, thereafter, made the observation that it would do her good to remain in jail all night, or that at least it would not hurt her, or words to that effect, and told Mr. Race, so he says, that she would have to stay in jail and could not get out.

After the telegram from Mr. Thomas had come to Mr. Agler of counsel for plaintiff, Triska refused to look at it or to give any consideration whatever to its contents. The effect of the testimony of Mr. Agler is that Triksa at all times was in the attitude of hostility toward the plaintiff.

It is inferable from the record, that when it came to the attention of Seltzer and Triska that the plaintiff had no account in the Pomeroy Bank, they thereupon concluded, without further inquiry, that she was guilty of the offense with which she was afterwards charged, and, notwithstanding the fact that the check might be paid by the bank upon an arrangement with some one else, she was guilty of passing the check with intent to defraud. On the other hand, it may be, as claimed by defendants, that Triska called the bank a second time. One of the principal questions of fact in this case is, did Seltzer or anybody for the Lazarus Company call the bank the second time and, if so, what did he say to the bank and what information did he receive from the bank? It is necessary, however, to examine carefully the testimony on the subject of the telephone calls.

Mr. Enright, the manager of the business office, whom it is claimed placed the first call, did not appear as a witness. The cashier did not testify that Mr. Enright placed any call at the bank. Mr. Enright is referred to by Miss Smith, to whom the check was presented, as "the manager"; by Seltzer, as "the cashier". Seltzer says that Mr. Enright told him in the presence of plaintiff that he had called the bank and that they said that the check was no good. That he then suggested that the plaintiff go down to his office with him and they would then see if the check was good, and if so, it would be paid.

On direct examination Seltzer states that at his office (the second call) he said to plaintiff that,

"The bank has told Mr. Enright and Mr. Enright told you in my presence that this check is no good. She said, 'Well I have arrangements made to pay this check.' Upon that I put in a call myself to the Pomeroy National Bank to verify her conversation."

Question: "What did you ask the bank?"

Answer: **"I asked the bank if Jewel Thomas had any money in the bank."** (Emphasis ours.)

This is the only question and the only answer respecting the exact query made by Mr. Seltzer to the bank whether or not there was any arrangement whatever whereby the check would be honored. It will be noted that the question was not in form to elicit any information relative to payment of the check by Mr. Thomas or payment on the credit of his account but when the witness states what he said to the plaintiff following the conversation with the bank it is that,

"I told the plaintiff that the bank told me there was no money in the bank, she had no credit, she had no authoriza-

tion to sign a check and no arrangements had been made."

This is not what the witness testifies the bank told him.

Question: "And what did she then say?"

Answer: "I don't think—I don't remember her saying anything to me. I went around to Mr. Triska and I says, 'there is the case, it is your baby from here on'. Mr. Triska took it from thereon."

Thereafter, Mr. Seltzer on cross-examination stated that plaintiff had said nothing to him at all about arrangements made whereby her husband, Henson Thomas, would pay checks drawn upon the bank by her. The witness, however, admits that something was said about Henson Thomas to the effect that he was in the hospital.

Upon the same subject matter Triska testified at page 249, et seq., of the record as follows:

"As I said, Mr. Seltzer, Mr. Enright and Jewell Thomas were seated there in the room when I arrived there, and I asked Mr. Seltzer the reason for the call, and he handed me a check, and told me that Jewel Thomas had attempted to cash it. I asked him whether any money had been paid—at any rate, that came up in the conversation, and I was told no money had been paid. Mr. Seltzer said Mr. Enright had telephoned to the bank at Pomeroy and was told there was no account in the name of Jewell Thomas. Mr. Enright then stated that that was correct. I asked Jewell Thomas whether that was right, and she said it was, but that the bank would honor that check. **She said that her ex-husband had made arrangements with the bank to honor any checks she wrote on his account.** I told her that the check was not drawn on his account, but was in her name. She said that made no difference, the bank would honor it. About that time Mr. Seltzer received a telephone call, his connection had been made with the Pomeroy National Bank, and I heard him ask for the cashier. Then I heard Mr. Seltzer ask whether any arrangements had been made to honor any checks cashed or written by Jewell Thomas, **whether the husband made any arrangements.** Mr. Seltzer said at the conclusion of the conversation, * * * that he had been told no such arrangements had been made." (Emphasis ours.)

Plaintiff at all times has insisted that she had told Mr. Enright at the business offices of the Lazarus Company and Enright, Seltzer and Triska at the office of Seltzer, that arrangements had been made with her former husband to take care of the payment of this and other like checks. She denies that any telephone call was placed to the bank by Mr. Seltzer

·or that any conversation ensued between him and the bank at his office. It will be noted that the testimony of Seltzer and Triska respecting the conversation with the bank might well leave uncertainty in the minds of the jury, if it found that the telephone call was placed, as to what was said by Seltzer to the bank and what was said by Seltzer and Triska to the plaintiff in reporting what the representative of the bank said to Seltzer. In the effect of this testimony is the crux of the ·defense.

The Lazarus Company having asserted that this second call ·was placed, it was a part of its case to show this fact, together with the information received by reason of said call as it related to probable cause for the arrest and prosecution of the plaintiff. Notwithstanding this obligation, no employee of the Pomeroy Bank was offered as a witness, no testimony was forthcoming from the telephone company to establish the ·claim that a second call was placed with the bank. The jury upon this situation had the right in its discretion to believe the testimony of the plaintiff that no second call was made or that, if placed, proper inquiry was not made by Seltzer to elicit the truth or reliability of the assertions of plaintiff respecting the payment of the check or that a true statement of what the representative of the bank said was not given by Seltzer or Triska.

It was essential to a criminal charge against the plaintiff, under §§710-176 GC, that she intend to defraud the Lazarus Company.

The jury had the right to find that probable cause did not appear for the arrest and prosecution of plaintiff.

The rule of liability for exemplary damages against a corporation is announced in the cases of **The Columbus R. P. & L. Co. v Harrison, 109 Oh St 526; Tracy v The Athens & Pomeroy Coal & Land Company, 115 Oh St 299;** and **Fitscher v Rollman & Sons Co., 31 Oh Ap 340,** and is that such damages may be awarded only when it appears that the corporation authorized, ratified or participated in the wrongdoing. These cases are helpful only in stating the rule and do not obviate the difficulty which is found in the instant case in its practical application. Here it is the claim of the plaintiff that Seltzer was the agent of the Lazarus Company, for the purpose of arresting and handling the prosecution of the plaintiff for the infraction of the law in her dealings with said company. If so, it could properly have found that the Lazarus Company authorized Triska and Seltzer to make the arrest and Triska to carry on the prosecution against the plaintiff. But we have the further question, was the authorization broad enough to make the Lazarus Company liable for those acts of

Triska which could be found to have constituted express malice on his part toward the plaintiff.

If all of the evidence upon the subject matter now under consideration be resolved in favor of the defendants, there is left open the issue whether or not the charge against her was presented within a reasonable time and, if not, the right of the jury to find that she was falsely imprisoned.

An early Ohio case on the subject, not expressly overruled, is the **Atlantic & Great Western Railway Company v Dunn, 19 Oh St 162**, the syllabus of which is,

"A corporation may be subjected to exemplary or punitive damages for tortious acts of its agents or servants done within the scope of their employment, in all cases where natural persons, acting for themselves, if guilty of like tortious acts would be liable to such damages."

Judge Allen in the opinion in Columbus Railway Power & Light Company v Harrison, undertakes, we believe, unsuccessfully to reconcile the law there announced with the quoted syllabus in Railway Company v Dunn. If we apply the pronouncement in Railway Co. v Dunn, the plaintiff would have the right to recover exemplary damages against the Lazarus Company if she could recover such damages against Triska, its agent. It is but the simple application of the rule announced, namely, that if Triska is liable for malicious conduct as an individual his principal, likewise, may be held liable if such acts were done within the scope of his employment.

In a note to Forrester v Southern Pacific Company, 48 L. R A. (N. S.), 38, Ohio, upon the authority of the Dunn case, is put among those states which assert the rule of general liability of a corporation for exemplary or punitive damages for acts done by its agents acting within the scope of their employment, as would, if done by an individual acting for himself render him liable for such damages.

As distinguished from this rule of general liability there is set out that of exceptional liability wherein the liability is restricted to the master's participation in, or authorization or direction of the servant's malicious act. We are convinced that Ohio has now by virtue of the later decisions come within the latter classification.

In **Tracey v The Athens & Pomeroy Land & Coal Company, 115 Oh St 299**, in a Per Curiam, the court at page 303 said:

"A principal, therefore, though, of course, liable to make compensation for injuries done by his agent within the scope of his employment, can not be held liable for exemplary or punitive damages merely by reason of wanton, oppressive or malicious intent on the part of the agent. In other words,

44

where that which is tantamount to punitive or exemplary damages is to be recovered by reason of the wilful character of the wrongful act, proof of this knowledge and wilfulness on the part of the party producing the wrong must be made. The employer can not be punished for the personal guilt of his servant or agent, unless the employer authorized, ratified, or participated in the wrongdoing."

In this case the court had under consideration the acts of a mine superintendent of the defendant company, an officer with general managerial nad supervisory authority who, himself, the court said had acted maliciously. Notwithstanding his general authority the court held that his principal could not be held in punitive damages under the rule which it announced.

In the **Columbus Railway, Power & Light Company v Harrison, supra,** the syllabus is,

"In an action for personal injury for an assault upon a passenger by the employee of a corporation, punitive damages can not be recovered against the corporation in the absence of evidence that the assault was authorized, participated in, or ratified by the corporation, or that the corporation has failed to exercise due and reasonable care in selecting or retaining its employee."

It will be noted that the court there said that it must appear that the assault was authorized by the principal. In this case the motorman and conductor of the Railway Company had maliciously assaulted a passenger. The details do not appear in the opinion but it is recognized that the authority of a conductor on his street car is complete and that in maintaining order and handling passengers, even to the extent of ejecting them from the car, he is given wide latitude. In carrying out the broad power vested in him it is conceivable that he might assault a passenger.

Notwithstanding this situation, the court invoked the rule that liability of the principal only attended, if it appeared that the corporation directed, participated in, or ratified the assault.

Chief Justice Marshall, now of counsel in this case, participated in the opinion in Columbus Railway, Power & Light Company v Harrison. Outside of Ohio the rule of liability in punitive damages is not so restricted because express or clearly implied authority to a private detective to make an arrest includes the manner and method by which the arrest is made. 22 Am. Jur. 378, 380, 381, 384, 35 A. L. R. 678; 4 L. R. A. (N. S.) 282; 28 L. R. A. (N. S.) 88, L. R. A. 1918F, 1249, Annotation to

Lamb v Charles Stores Company, 77 A. L. R. 929; McLoughlin v N. Y. Edison Co., 252 N. Y. 202, 169 N. E. 277.

The evidence in this case did not support the submission to the jury of the question of liability of the Lazarus Company for punitive damages.

Assignment No. 10, error in refusal of the court to give special requests before argument, Nos. 4, 6, 7, 8 and 9 submitted by appellant.

Plaintiff requested sixteen special charges before argument, five of which the court gave and eleven of which were refused, many of which were repetitious in substance. Defendant requested nine special charges before argument, four of which were given and five refused. Eight of the nine special charges related to probable cause and several of them differed very little in substance. The other one was for direction of the verdict for the Lazarus Company. No. 5 was a correct exposition of the law of probable cause and was given in this language, "Probable cause may be defined as reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the accused is guilty of the offense with which he is charged."

No. 4, which the court refused to give, was, "Probable cause is a state of mind in this, that the facts are regarded from the viewpoint of the prosecutor. The question is not what the actual facts were but what he had reason to believe they were." This charge was incorrect in that it made no qualification as to any restriction upon any viewpoint of the prosecutor. The viewpoint of the prosecutor was restricted to that of a reasonably prudent man.

Special request No. 6, "The question of probable cause or the absence of it is in no sense dependent upon the guilt or innocence of the accused but depends upon the prosecutor's belief in the guilt of the accused, based on reasonable grounds. Where such honest belief is shown, probable cause is sufficiently established, although the accused is in fact innocent." This is a sound exposition of the law but it is so like unto request No. 5 which was given, that the action of the court in refusing it was not in our judgment prejudicial.

Special request No. 7 reads: "The guilt or innocence of the plaintiff of the offense with which she was charged is in nowise involved in this case. It is only the question of the information in the possession of the one causing the arrest and whether he acted thereon as any reasonable or prudent man would have done." The same thing may be said of special request No. 9 as of No. 7, as relates to probable cause.

Technically, it is true that the guilt or innocence of the plaintiff was not involved in any issue which the jury had to

determine, but only because the answer admitted that the plaintiff had been acquitted of the charge against her, but to say to the jury without qualification, that it was not involved and had nothing to do with the case, was inexact, unnecessary and not required in conjunction with the part of the charge following, which was only repetition of a definition of probable cause which had theretofore been given in special request No. 5.

In addition to the special requests of defendant given by the court before argument the general charge carefully and correctly defined probable cause and its application to both causes of action, namely, false imprisonment and malicious prosecution. So that, the jury before and after argument was correctly informed as to the elements of probable cause and what the evidence had to disclose to support it. Upon the whole record we find no error in the refusal to give any of the special charges, Nos. 4, 6, 7, 8 and 9.

Next following assignment, No. 1, "the court erred in not directing verdict for the Lazarus Company".

We have said enough upon the other phases of the case to indicate that we are satisfied that the plaintiff had a full right to go to the jury on her cause of action against the Lazarus Company upon the case which she made by her testimony and that of her witnesses.

The next assignment, No. 12, is claimed misconduct of counsel for plaintiff. This grew out of the following colloquy when Mr. Seltzer was on the stand, in response to a question:

Mr. Seltzer: "When this girl came in my office——."

Mr. Marshall: "I object. If there is a story prepared here——."

Mr. Rector: "That is not true; that is not true. I move to withdraw a juror and continue this cause."

Mr. Marshall: "I wondered whether he has a story prepared——."

The Court: "The court will overrule that motion but that type of remark ought not to be made and the jury is specifically instructed to disregard it. Read the question."

Mr. Rector: "I will except to the ruling."

The Court: "All right."

Mr. Marshall: "I except to the admonition."

The Court: "That sort of statement ought not to be made, and the incident is closed."

The court was correct in the conclusion that the statement should not have been made, in so instructing counsel who made it and in directing the jury to disregard it. The statement was not of such nature as to so necessarily prejudice the

the jury as that its effect could not be corrected by the instruction which the court gave. It did not require the application of the principle announced in the cases cited in appellant's brief, **C. P. & E. R. R. Co. v Pritschau, 69 Oh St 438; Hayes v Smith, 62 Oh St 161; 39 O. Jur. 707; L. R. A. 1918D 7.**

The final assignment of error, No. 5, is, that the verdict. is manifestly against the weight of and not supported by the testimony.

The parties in this case were at variance on every material issue made by the pleadings and offered evidence supporting their respective claims. Plaintiff offered proof that she was a woman of good repute. She was interrogated as to certain occurrences in which she had been involved, which certainly must have impressed the jury unfavorably toward her in certain respects. If the impressions were as unfavorable as the inferences claimed for them by the defendants, it would be inconceivable that the jury would return a verdict in the amount fixed by it. On the other hand, the plaintiff gave her interpretation of the events with which she was associated and the occurrences which would, if true, together with the testimony as to her general bad reputation, have completely discredited her. The jury had the opportunity to observe the witnesses. They saw the plaintiff. If she was the type of woman, and was as debauched as much of the testimony of defendants indicated, it would be noticeable in her appearance.

Upon a motion for new trial the most favorable intendment must be given to the plaintiff's testimony. So doing, it. can not be said that the verdict is not justified, except on the claim of punitive damages. The plaintiff, having been successful, there was no necessity for prosecuting cross appeal and therefore, no test is applied to the correctness of the court in permitting much of the testimony as to specific acts of misconduct on the part of the plaintiff. It is probable that proof of these acts very substantially reduced the judgment which was entered in behalf of the plaintiff.

We are of opinion that no error prejudicial to the appellant appears in any of the particulars assigned except in permitting the jury to consider the question of punitive damages, and for that reason only the judgment against the F. & R. Lazarus Company must be reversed.

GEIGER, J., concurs in judgment.

BARNES, J., concurs in judgment:

I willingly concur with the majority opinion that the court was in error in submitting the question of punitive damages to the jury. This upon the theory that there was no evi-

dence supporting express malice; nothing more than legal malice as would arise on proof of no probable cause.

In my opinion we should go farther and determine that considering the evidence in its strongest light in favor of plaintiff, probable cause was shown and we should enter final judgment. A careful reading of plaintiff's testimony as to what she said to the cashier and special officer of The Lazarus Company tends to throw further suspicion on her attempt to cash a check when she had no funds in the bank. Her statement that her divorced husband had told her that she might issue checks against his account, would in no sense authorize her to draw a check against her account when she did not and never did have any money in the bank. It seems to be conceded that The Lazarus Company made one call at the bank upon which the check was drawn at Pomeroy, Ohio, and thereby ascertained that Mrs. Thomas had no account at the bank, although plaintiff herself denies any knowledge of this call.

It is inconceivable that the officers of the bank would simply answer, "No account", if any arrangements had been made through which her checks would be cashed.

Probable cause is a mixed question of law and fact. **25 O. Jur., Page 948 (Malicious Prosecution), Section 74,** and same section under Cumulative Supplement. Both in the text and the supplement, several Ohio cases are cited to the effect that where the factual question is not in dispute it becomes a question of law as to whether or not there was probable cause for the institution of the criminal action. In the annotations under Section 74 in the Cumulative Supplement section, these cases are again compiled. Quotation is made from Ruling Case Law, Volume 18, Section 939, to the effect that the overwhelming weight of authority outside Ohio supports the above ruling. The compiler of the notes makes the observation that certain listed cases were necessarily overruled by the Supreme Court of Ohio in the case of **Pennsylvania Railway Company v Hobbs, 96 Oh St 584.** I am unable to understand this observation, since the report of the Hobbs case contains nothing more than an affirmation of judgment on the authority of **Ash v Marrow, 20 Ohio 119.** The Marrow case above referred to, as I read it, is in line with other cases establishing the rule.

It is quite true that in the trial of the instant case there was a dispute on the factual question as to probable cause. My position is that taking the testimony in the strongest light favorable to plaintiff, there arises a question of law as to whether or not such facts constitute or disprove probable cause.

I also think that the rules and regulations of the Stores Mutual Protective Association should have been admitted in

evidence. This was the entity with which The Lazarus Company had a service contract for protection against theft, shoplifting and numerous other unlawful acts.

I can see no reason why The Lazarus Company would not have the right to contract with the Stores Mutual or any other entity to take charge of any and all law violations occurring within their store. I understand fully that such a contract would not protect The Lazarus Company if in fact they were participants in the arrest of the plaintiff.

The exhibit offered in evidence would be supporting as to the claimed relationship and have a bearing on the issue as to whether or not the Stores Mutual were acting independently or as the agent of The Lazarus Company.

Furthermore, it is my opinion that the trial court was in error in admitting in evidence as an exhibit the letter written by attorney for the plaintiff following the time that she had been bound over to the grand jury.

Considering the record in its entirety, I do not think that a cause of action is made out against The Lazarus Company, and therefore the court erred in overruling counsel's motion for a directed verdict.

### ON APPLICATION FOR REHEARING.

No. 3132. Decided February 13, 1941.

Carrington T. Marshall, Columbus, L. DeWitt Agler, for plaintiff-appellee.

Wilson & Rector, Columbus, for defendant-appellant.

BY THE COURT:

Submitted on application of appellee for rehearing. The brief of appellee suggests the application of the two-issue rule to the verdict and judgment, urges that the evidence on behalf of the plaintiff was sufficient to require that the question be presented to the jury as to the ratification by appellant of the acts of its agents upon which express malice could be predicated, and finally that if the court was right in its construction of the law of Ohio as to punitive damages, it went too far in this case in holding that as a matter of law the facts adduced did not raise an issue as to such damages against the Lazarus Company.

We, of course, are familiar with the general application of the two-issue rule as found in the leading cases in Ohio. We know of no instance and counsel have cited none where the rule has been applied to a verdict which may have included both compensatory and punitive damages. We are inclined to the belief that the situation presented by this judgment is analogous to that wherein the court charges generally upon

two propositions of law, one of which is correct and the other incorrect, and it being impossible to determine which proposition of law the jury accepted, the charge must be held to be prejudicially erroneous. **Insurance Co. v Purcell, 19 O. C. C. 135; Rapp v Becker, 4 O. C. C. (N. S.) 139.** It has been held that the two-issue rule does not apply where a court in its charge injected a new issue into the case, for example, contributory negligence, when there is no evidence thereof: **Kolp v Stevens, 15 Abs 14.**

In this case the court properly submitted to the jury the issues on both causes of action, namely, false arrest and malicious prosecution. The amount of the verdict is such that it might properly include compensatory damages only upon a finding in behalf of the appellee on both causes of action. Thus, it may be that the verdict does not include any punitive damages. However, punitive damages were permitted to be assessed on both causes of action. If the amount of the verdict in this case includes compensatory damages only and was returned upon the first cause of action only, we could not support it because we believe it would then be excessive. So that the only basis upon which we could affirm this judgment would be that either it included compensatory damages only on both causes of action, or compensatory damages on one cause of action, namely, the second. We are in grave doubt if the two-issue rule would permit us to indulge either inference to support the judgment as against our conclusion that the evidence did not support the submission of the question of punitive damages to the jury. There is also presented the effect of the testimony as to the financial worth of the Lazarus Company which was admissible only upon the question of punitive damages. The jury, therefore, had before it evidence which it had no right to consider, the effect of which would be manifestly prejudicial to the defendant.

We considered ratification by the Lazarus Company of the malicious acts of Triska and whether or not they were authorized, and discussed the question at length in our original opinion. It may be that we did not expressly mention ratification, but it was included in our general consideration of the matter.

If the evidence, in our judgment, presented an issue as to the right of the jury to award punitive damages, we would not disturb the judgment because we find no error of commission in the charge of the court, and if the facts adduced under the law constitute the elements of exemplary damages, the construction which the jury gave to them would not be disturbed.

We recognize full well that the law in Ohio as to the

conditions under which punitive damages may be awarded against a corporation is uncertain and in our judgment should be clarified because of the conflict, as we view it, between the early case of **Railway Company v Dunn, 19 Oh St 162;** and the later cases, **Columbus Railway & Power Company v Harrison, 109 Oh St 526;** and **Tracey v Athens & Pomeroy Land & Coal Co., 115 Oh St 299.**

We further recognize that the principle upon which punitive damages may be awarded against a corporation under the later cases appears to be different than that controlling the award of such damages against an individual.

We have interpreted the pronouncement of the later cases in the Supreme Court to the best of our ability and discussed them at length in our former opinion. Nothing of advantage would result by a restatement of the principles involved.

The application for rehearing will be denied.

GEIGER, P. J., BARNES and HORNBECK, JJ., concur.

THOMAS, Plaintiff-Appellee v. F. & R. LAZARUS CO. et, Defendants-Appellants.

Ohio Appeals, Second District, Franklin County.

No. 3135. Decided January 17, 1941.

Carrington T. Marshall, Columbus and L. D. Agler, for plaintiff-appellee.

Wilson & Rector, Columbus, A. M. Calland, Columbus and J. V. Ralston, Columbus, for defendants-appellants.

**OPINION**

By HORNBECK, P. J.

This is the appeal of defendants, John J. Triska and The Columbus Stores Mutual Protective Association from a judgment against them and each of them for the sum of $3,000 in favor of plaintiff-appellee.

The appellants assign 16 errors which are common to their appeal and the appeal of the F. & R. Lazarus & Company, No. 3132, in which appeal a decision is handed down today. The discussion of these assignments of error will in the main suffice for assignments on this appeal with some further observation upon the question of the right of the jury to award punitive damages against the Columbus Stores Mutual Protective Association.

Triska, acting for his association had apparent authority to do all things authorized by the articles of incorporation of the Protective Association. Among these was the protection of its subscribers against abuses in trade and for the investi-

gation of fraudulent debtors, thieves, burglars, embezzlers, shoplifters and persons obtaining money, credit, property or merchandise by false pretenses, theft, embezzlement, burglary or other unlawful means; and to do any and all things necessary or incident thereto.

This authority in Triska to do all things necessary or incident to the protection of the Lazarus Company against the obtaining of money by unlawful means, in our judgment, even upon the restricted rule in Ohio, is broad enough to include malicious acts which the jury had the right to find that Triska had committed. The court then committed no error in submitting the question of punitive damages as to the Protective Association.

 Two other errors are assigned, No. 17 and No. 18, which are pertinent to this appeal only, namely,

17. Error in overruling defendants' demurrer to the amended petition on the ground that several causes of action are improperly joined.

18. Error in overruling motion of defendants to amend the journal entry of date April 22, 1939, upon the overruling of their demurrer to the amended petition on the ground that several causes of action were improperly joined.

The action of the court on the demurrer is made the subject of extended briefs, particularly by the applicants and many authorities are cited. It is their claim that under §11306 GC, the causes of action for false arrest and malicious prosecution may not be joined because the action for false arrest involves injury to person (4) §11306 GC, and malicious prosecution involves an injury to character (5) §11306 GC. Many cases are cited and the argument is made that by analogy certain decisions of our court of last resort support the contention made on behalf of appellants.

We shall not discuss at length the cases cited but are content to say that, in our judgment, there was no misjoinder of causes of action and that the demurrer upon that ground was properly overruled. 1 C. J. S., pages 1214, 1234 and 1251, 1 Am. Jur., page 474.

In 1 C. J. S., page 1214, it is said,

"At common law, false imprisonment can not be joined with malicious prosecution, as the remedy for the former is trespass, and for the latter is case, or with slander; but the rule is otherwise under statutory provisions abolishing the distinction between trespass and case."

At page 1251,

"A cause of action for malicious prosecution may be joined with one for false imprisonment, the causes not being necessarily inconsistent, * * *."

At page 1234,

"To constitute inconsistency so as to preclude a joinder the causes must be inherently repugnant and contradictory, or contrary, the one to the other."

The numerous California cases cited are not in our opinion authority against the joinder in this case. For instance, in Collyer v Kress Company et (Cal.) 44 Pa. (2d) 638, the plaintiff had joined the action of false imprisonment and malicious prosecution and the court had submitted the cause upon issues drawn upon both causes of action. The jury found for the defendant on the charge of malicious prosecution and for the plaintiff upon the claim of false imprisonment. The gist of the decision is that the verdict was excessive because to reach it, the jury must have given consideration to testimony which was germane only to the cause of action for malicious prosecution.

The case on its facts is similar to the instant case and, although it does not appear that the question of joinder was raised, it is significant that under the California Code, which is much like ours, the two causes of action were joined in the same petition.

The other California cases cited are not at variance with Collyer v Kress Company. They hold that the same facts upon which a claim of false imprisonment is predicated will not support the charge of malicious prosecution but in Warfield v Krueger (Cal.) 274 Pa. 764, it is recognized in the syllabus that,

"If acts complained of had been based on different facts, causes of action for false imprisonment and malicious prosecution might be united under Code, Civ. Proc. Par. 427."

We have examined all of the California cases cited and find no difficulty in reconciling them upon the theory of proper joinder of false imprisonment or arrest and malicious prosecution where the facts plead constitute the elements of the two offenses.

The trend of modern judicial expression is toward the utmost liberality in permitting joinder of causes of action. We are satisfied that no prejudice resulted to appellants by the overruling of their demurrer.

The 18th assignment of error is not well made because the court speaks only through its journal and it is immaterial whether or not it is in accord with that which may have been stated in an opinion or decision prior thereto.

The judgment against John J. Triska and the Columbus Stores Mutual Protective Association will be affirmed.

GEIGER, J., concurs.

BARNES, J., dissents.