O'NEIL, APPELLANT, *v.*
THE STATE OF OHIO, APPELLEE.

(No. 83AP-104—Decided
February 23, 1984.)

*Mr. Perry G. Dickinson* and *Mr. James Aylward,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Mark T. D'Alessandro,* for appellee.

*Mr. Bruce H. Kiracofe* and *Mr. Bruce Campbell,* urging reversal for *amicus curiae,* American Civil Liberties Union of Ohio Foundation, Inc.

MOYER, J. This case is before us on the appeal of plaintiff-appellant, Leonard O'Neil, from a judgment of the Court of Claims of Ohio awarding O'Neil $6,967 as a result of his erroneous incarceration in the Mansfield Reformatory for three-and-one-half years.

O'Neil was convicted of armed robbery on November 3, 1971 in the Court of Common Pleas of Portage County and sentenced to serve ten to twenty-five years in the Ohio State Reformatory. O'Neil began serving his sentence on the day he was convicted and his conviction was affirmed on appeal.

On March 19, 1975, the Court of Common Pleas of Portage County granted O'Neil's motion for a new trial and the state's motion to *nolle prosequi* the indictment after another person confessed to the crime and further investigation indicated that O'Neil had not committed the crime for which he was imprisoned.

O'Neil filed suit in the Court of Claims seeking to recover damages for his unlawful incarceration but his complaint was dismissed for failure to state a claim upon which relief could be granted and for lack of jurisdiction.

The General Assembly then enacted special legislation, Am. Sub. H.B. No. 123, effective November 3, 1981, which authorized O'Neil to "file a claim in the Court of Claims against the State of Ohio for loss of education and employment and general damages that allegedly resulted from an erroneous imprisonment."

In support of his appeal from the judgment awarding him $6,967, O'Neil raises the following assignment of error:

"The judgment of the trial court is contrary to the manifest weight of the evidence and constitutes an abuse of discretion."

The American Civil Liberties Union of Ohio Foundation, Inc., filed an *amicus* brief on O'Neil's behalf in which it claims that the award is not only against the manifest weight of the evidence and an abuse of discretion, but that it "is so incongruous with the * * * purpose of Ohio's Court of Claims Act and is so disproportionate to the evidence of record * * * that it shocks the conscience."

The Supreme Court recognized, in *State, ex rel. Moritz,* v. *Troop* (1975), 44 Ohio St. 2d 90 [73 O.O.2d 349], paragraph one of the syllabus, that:

"The Court of Claims Act, R.C. Chapter 2743, is a remedial law, and, as such, R.C. 1.11 requires that the Act, and all proceedings under it, be liberally construed in order to promote its object and to assist the parties in obtaining justice."

Clearly this court cannot reverse the judgment below if that judgment is supported by competent and credible evidence. See *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], syllabus. However, if the judgment is against the manifest weight of the evidence and is so grossly inadequate that it shocks the conscience and constitutes an abuse of discretion, this court cannot allow the judgment to remain undisturbed. See *Spicer* v. *Armco Steel Corp.* (App. 1974), 68 O.O. 2d 314, 322 N.E. 2d 279.

The elements of O'Neil's damages in this case are generally defined in Am. Sub. H.B. No. 123 as "loss of education and employment and general damages." The Court of Claims was required to "assist the parties in obtaining justice" in this case by applying the words used by the General Assembly in Am. Sub. H.B. No. 123 in a manner that is consistent with the clear intent of the legislation.

The first fourteen pages of the opinion of the Court of Claims discuss the preliminary issue of whether O'Neil was erroneously imprisoned. The court properly found that his imprisonment was erroneous. The final page of the trial court's opinion states only that O'Neil was erroneously imprisoned for three-and-one-half years and is entitled to damages in the amount of $6,967 "based upon his loss of earnings and educational opportunities and general damages."

Neither the opinion nor the judgment entry indicates how the total amount of damages was determined or how it should be allocated to each of the three categories designated in Am. Sub. H.B. No. 123. In a footnote to its opinion, the court stated that:

"Plaintiff's period of employment, prior to and following his imprisonment, was brief and highly intermittent. The evidence indicated further that his rate of pay rarely, if ever, exceeded the minimum required by law.

"It should be noted that the State of Ohio furnishes prison inmates with

shelter, food, clothing and medical and surgical services." See R.C. 2743.02(D).

No society has developed a perfect system of criminal justice in which no person is ever treated unfairly. The American system of justice has developed a myriad of safeguards to prevent the type of miscarriage to which the claimant herein was subjected, but it, too, has its imperfections. Fortunately, cases in which courts have unlawfully or erroneously taken a person's freedom by finding him or her guilty of a crime which he or she did not commit are infrequent. But, when such a case is identified, the legislature and the legal system have a responsibility to admit the mistake and diligently attempt to make the person as whole as is possible where the person has been deprived of his freedom and forced to live with criminals. Indeed the legal system is capable of creating few errors that have a greater impact upon an individual than to incarcerate him when he has committed no crime. It is in this context that we review the trial court's judgment and the record in this case.

The award of $6,967 for O'Neil's three-and-one-half years of erroneous imprisonment is grossly inadequate, is against the manifest weight of the evidence, and shocks the conscience.

The Court of Claims could have found, without erring, that O'Neil suffered no loss of education due to his erroneous imprisonment since O'Neil apparently quit school prior to his arrest and made no attempt while imprisoned or after his release to further his education.

Regarding the second category — lost earnings — although O'Neil was employed only intermittently prior to his incarceration, he was only nineteen years old when he was arrested. He had apparently completed the tenth grade and worked for his father, who was a cement finisher and a bricklayer, and then for his uncle, who owned a car wash. As the economist who testified for O'Neil stated, the earnings record for a teenager is not necessarily a reliable predictor of the person's earnings in subsequent years. O'Neil's earnings records for the five years following his imprisonment[1] show that his average annual earnings were $3,042.52.[2] Such earnings may be used to prove lost earnings even though they may not be used in this case to prove loss of future earnings. The Court of Claims' award, even if it is for only lost earnings, gives O'Neil $1,090.57 per year of incarceration. That amount is below even the minimum wage to which the Court of Claims referred in its opinion.

However, assuming *arguendo* that the evidence supports the amount awarded for loss of earnings, the Court of Claims' award does not provide for general damages. The award simply is not large enough to compensate O'Neil for loss of earnings and general damages.

The use of the term "general damages" in Am. Sub. H.B. No. 123 indicates that the General Assembly intended to permit O'Neil to recover damages in addition to his lost earnings. Unfortunately, neither Am. Sub. H.B. No. 123 nor any other statute defines general damages for purposes of the issue in this appeal. While there are several reported Ohio cases in which civil damages were awarded against an in-

---

[1] We have disregarded 1975, during part of which he was imprisoned, and 1982, during which his claim was heard.

[2] Since his release, O'Neil has earned the following amounts:

| | |
|---|---|
| 1976 | $5,818.54 |
| 1977 | 1,624.01 |
| 1978 | 6,149.00 |
| 1979 | 2,652.50 |
| 1980 | 2,011.06 |
| 1981 | -0- |

He also worked fulltime for minimum wage at a restaurant from which he was unable to get his employment records so these figures are not complete.

dividual for erroneous detention or incarceration, no case sets forth the standard to be used by the state in determining the amount of compensation it owes a person who has been erroneously imprisoned. We do observe, however, that the following awards have been given by juries to persons improperly incarcerated or placed under arrest: $4,000 for three days of incarceration, *Kuhn* v. *McNeal* (1931), 41 Ohio App. 485; $6,000 for five hours of incarceration where a suspected robber was held by police and then released when private security personnel decided he was no longer a suspect, *Morgan* v. *B. F. Goodrich Co.* (App. 1937), 23 Ohio Law Abs. 541; and $3,000 for being held approximately eight-and-one-half hours on the false belief that a check was written on a nonexistent account, *Thomas* v. *F. & R. Lazarus & Co.* (App. 1941), 40 Ohio Law Abs. 29.

While none of these cases is controlling on our disposition of this appeal, they do indicate the monetary value jurors have placed upon humiliation, deprivation of freedom, and injury to reputation. In *Mouse* v. *Central Savings & Trust Co.* (1929), 120 Ohio St. 599, in holding that the petition of a person who had been erroneously confined in jail for writing checks on an account with ample funds did not need to plead special damages to survive a motion for directed verdict, the Supreme Court recognized the nature of the affront to the individual when an improper incarceration occurs:

"What could be a more real and existing damage to a person of good reputation than confinement in the county jail upon a charge concededly erroneous? Such damage is actual, so real, present, and existing, in fact, that the unlawful restraint by one person of the physical liberty of another gives rise to a cause of action all

its own, namely, that of false arrest." *Id.* at 611.

The best statement of the test for determining general damages we have seen is contained in a carefully considered and precise recommendation to the Board of Claims of the state of Tennessee in which the issue was the amount of damages to be paid by the state of Tennessee to a person who had been erroneously convicted of rape and who had served almost five years of his prison term. The recommendation states that the elements of damages should include lost wages, attorney fees for defending against the criminal charges, any physical injuries incurred while imprisoned and other items resulting from loss of liberty and reputation, such as separation from his family and society.

Our review of the available case law and our interpretation of the term "general damages" in this context causes us to hold that, in determining the amount of general damages to award a person who has been erroneously imprisoned by the state of Ohio, the Court of Claims must consider the following:

(1) All actual and unreimbursed expenses and costs incurred by the claimant in defending himself in any legal proceedings directly related to his incarceration and the costs of pursuing his claim in the Court of Claims. Such costs and expenses should include attorney fees and court costs.

(2) The loss of liberty and separation from family and friends.

(3) Any injuries or particular adjustment difficulties suffered while he was incarcerated for which no compensation has been received.[3]

(4) Damage to reputation.

(5) Any other damages directly related to the erroneous incarceration.

In the case before us, the term gen-

---

[3] O'Neil testified that he "couldn't really fit into that kind of life [prison]" because everyone else in the reformatory was there for committing a crime and that he, therefore, requested and was granted a move to isolation to remove him from the "population."

eral damages is broad enough to include each of the foregoing categories of injuries if supported by the evidence. In fact, it could be reasonably argued that the entire amount awarded by the Court of Claims could be considered damages for loss of claimant's liberty alone.

However, general damages in this case would not include any loss of future earnings. Nor would it include a decline in earning capacity since decline in earning capacity would be included in the category pertaining to lost earnings. Also, the court may consider whether the claimant has previously been incarcerated, O'Neil apparently served some time in jail for a "misdemeanor" before his conviction in this case.

Where the General Assembly has designated the categories of damages to be considered by the Court of Claims, the court should determine each category separately and state specifically any amount it awards for each category. We emphasize that the amount to which any claimant is entitled in a case of erroneous imprisonment rests within the Court of Claims' discretion. However, since the amount awarded in this case does not seem to adequately compensate O'Neil for even his lost earnings and apparently does not provide any general damages, the judgment is grossly inadequate and does not fulfill the purpose of the special legislation which authorized O'Neil to file his claim. The assignment of error is sustained, the judgment of the Court of Claims is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

WHITESIDE, P.J., and McCORMAC, J., concur.