**FARLEY, Appellant,**

v.

**OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS, Appellee.**

[Cite as *Farley v. Ohio Dept. of Rehab. & Corr.* (1998), 128 Ohio App.3d 137.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97API11–1487.

Decided June 4, 1998.

*Linda S. Stukey* and *Michael J. Short,* for appellant.

*Betty D. Montgomery,* Attorney General, and *James P. Dinsmore,* Assistant Attorney General, for appellee.

---

LAZARUS, Judge.

Plaintiff-appellant, Otis Farley, appeals from a judgment of the Ohio Court of Claims awarding him $20,000 for having suffered permanent injury and pain. Because the trial court abused its discretion in recalculating the appropriate award for damages, we reverse the judgment of the trial court and enter judgment in favor of appellant for $100,000.

This court's earlier opinion rendered in *Farley v. Ohio Dept. of Rehab. & Corr.* (1997), 118 Ohio App.3d 576, 693 N.E.2d 859, provides an extensive review of the pertinent facts. In January 1991, at the time of his injury, appellant was an inmate at the Orient Correctional Institution and worked as a plumber's helper. While working to unplug a drain, appellant stepped on a cover plate for the pot

wash, at which time the side of the cover plate flipped up, causing appellant's right leg to fall into a pit. The pot wash was located in a pit in the floor and contained large racks used to hold pots and pans for washing. The water in the pit was usually kept between one hundred eighty and one hundred ninety degrees. Appellant testified that the water temperature was not well regulated due to a faulty regulator and, on occasion, the water reached the boiling point.

Appellant testified that his leg became wedged between pipes inside the pit and that another inmate and appellant's supervisor helped to pull appellant out. After pulling up his pant leg, they attempted to remove his sock and shoe. In doing so, appellant's skin also pulled off with the pants and the sock. Appellant compared the condition and appearance of his leg to that of "hamburger meat." Appellant's supervisor and another inmate took him to Fraizer. Health Center on a motorized cart.

At the health center, appellant was examined by a nurse, who gave him a shot of Demerol and an ice pack. He was taken back to his cell, where he was unable to walk on his own or get in and out of his assigned top bunk. Appellee refused to assign him to a lower bunk. With assistance, appellant returned to the health center later in the day, where he was given Tylenol with codeine. Appellant was also told to change the dressing on his leg once a day and to report to pill call three times a day. As appellant was unable to report to pill call, other inmates took his identification and returned with Tylenol for him. Appellant further testified:

"Q. Now, we have only gotten through the first day of the injury, what did you do for that night?

"A. Cried. I mean period. That's it. Laid up in that bed and cried."

The next day he received crutches but was unable to use them because the pain he suffered with his leg hanging down on the crutches was too much for him to bear. For three days appellant could not get in or out of his bed alone, at which time, he experienced incontinence. It was approximately three weeks before appellant could walk the distance to go to meals; meanwhile, he relied on other inmates to bring him food.

Appellant was never taken to the hospital. The doctor at the health center prescribed Tylenol with codeine for three to four days. Several areas of appellant's leg became infected, necrotic, and began to smell. Every day, for several days, the nurse removed the dead skin with a rough sponge. This process, as appellant described, hurt almost as much as the accident itself. Appellant described that the process felt like he was "being skinned."

Appellant suffered first, second, and, in his own opinion, third degree burns, as well as an ankle sprain. According to his treating physician, appellant still

suffers from pain, swelling, permanent discoloration, and limited movement and activities. He has a permanent scar that looks like a sock burn, which resulted from the elastic forming vertical ridges down his leg, as well as a circular burn around the ankle.

Appellant initially filed an action in the Court of Claims, seeking compensatory damages as well as damages for pain and suffering. Appellee admitted liability for the injury, and a trial was held on the issue of damages. At trial, appellant presented his own testimony, that of his treating physician, Dr. Ronald Casselberry, that of a fellow inmate, and that of a medical doctor, Dr. Thomas McCarthy. Appellee presented no evidence as to the issue of damages. The trial court concluded that appellant suffered a severe burn and a sprained ankle, rendered judgment in favor of appellant on the issue of liability, and awarded him $2,000 in damages for pain and suffering.

Appellant appealed the decision of the trial court awarding judgment to plaintiff in the amount of $3,000 for permanent discoloration of his right ankle, $2,000 for pain and suffering, plus medical expenses of $286. On appeal, this court reversed and remanded the matter to the Court of Claims for a calculation of damages, concluding that "[t]he evidence supports a finding that appellant has a permanent injury and has experienced 'excruciating' pain and will continue to suffer pain with time. As, such the trial court erred in awarding only $2,000 for pain and suffering because the amount is so grossly inadequate that it shocks the conscience and constitutes an abuse of discretion. * * *" *Farley,* 118 Ohio App.3d at 583–584, 693 N.E.2d at 864.

On remand and upon review of the transcript, depositions, and exhibits, the Court of Claims concluded that appellant suffered permanent injury and pain and suffering. The court rendered judgment in a total amount of $20,000 (May 28, 1997 judgment entry), but did not indicate how this total amount of damages was calculated for appellant's pain and suffering.

This matter is once again before this court on appeal from the lower court's decision of the $20,000 judgment. Appellant assigns the following assignment of error:

"The trial court erred in awarding only $20,000.00 for permanent injury and temporary and permanent pain and suffering."

By this assignment of error, appellant contends that the uncontroverted evidence of his serious, painful, and permanent injuries was of such gravity and magnitude that an award of $20,000 is clearly inadequate. The general rule and standard of review is that a judgment rendered below cannot be reversed if that judgment is supported by competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

"However, if the judgment is against the manifest weight of the evidence and is so grossly inadequate that it shocks the conscience and constitutes an abuse of discretion, this court cannot allow the judgment to remain undisturbed." *O'Neil v. State* (1984), 13 Ohio App.3d 320, 321, 13 OBR 398, 399, 469 N.E.2d 1010, 1013, citing *Spicer v. Armco Steel Corp.* (App.1974), 68 O.O.2d 314, 322 N.E.2d 279.

Appellant asserts that the amount of $143,000 is fair and reasonable compensation for the injuries he suffered. Appellant's expert, Dr. Casselberry, testified at trial that he observed a proximal tibial scar from the burn, necrosis, which is irreparable, and weakness of the ankle muscles. Damage was also observed to appellant's hair follicles on his leg, and these conditions relate to appellant's complaints of itching, burning, and increased sensitivity to the lack of sweat. The expert further testified that appellant has a twenty-five percent impairment of his ankle, which translates into a permanent impairment of seven percent of his whole person. The expert concluded that the ankle is likely to deteriorate and that appellant's pain and limp will worsen in the future.

At trial, appellee failed to present any evidence contesting appellant's calculation of damages. Rather, appellee argues that since appellant's burns set forth in the medical records are minimal, the Court of Claims fairly evaluated the evidence presented and reached a reasonable decision as to the damages appellant sustained. At no point in time did appellee present any competent, credible evidence refuting appellant's calculations of damages.

In his post-trial brief, appellant set forth calculations breaking down his types of injuries and claim for damages. Appellant's brief specifies that he has suffered $10,000 worth of traumatic injuries from immediate loss of skin and tissue to his right leg, damage to ligaments, strain/sprain of his ankle, and injury to the anterior and posterior muscle and connecting tissue of his right leg.

From the time appellant suffered his injury in 1991, he experienced excruciating pain that lasted for ten days, which he valued at $24,000. For the next forty days, appellant experienced a gradual decrease in his pain, in which he was eventually able to return to work. Appellant calculates these forty days of pain and suffering to be $27,000. Furthermore, after the first fifty days of his injury to the time of trial, appellant calculates his pain and suffering damages at $43,400. Future pain and suffering and past and future medical expenses for pain and suffering totaled $39,147.

After a careful review of the record, we find appellant's argument persuasive. The trial court's award of $20,000 still shocks the conscience and simply is insufficient to compensate appellant for his pain and suffering, and permanent injury. At the time of the accident, appellant was forty-three years of age, with a life expectancy of approximately sixty-three years. An award of $20,000 would

amount to less than thirty cents per day for the rest of appellant's natural life expectancy. We find that an award which is the equivalent of less than thirty cents a day appears to be an abuse of discretion and should be set aside.

In light of appellant's pain and suffering and his future permanent injuries that he will carry with him for the rest of his life, the amount of $20,000 awarded by the trial court is grossly inadequate and constitutes an abuse of discretion. The assignment of error is well taken.

For the foregoing reasons, appellant's sole assignment of error is sustained, the judgment of the Ohio Court of Claims is reversed, and this court, pursuant to App.R. 12(B), enters judgment for appellant in the amount of $100,000.

*Judgment reversed.*

PEGGY BRYANT and JOHN C. YOUNG, JJ., concur.