OPINION
{¶ 1} Plaintiff-appellant, Kathleen A. Kelly ("appellant"), appeals from the judgment of the Ohio Court of Claims of Ohio in her favor, contending the judgment rendered was inadequate and against the manifest weight of the evidence.
 {¶ 2} This cause arose from an automobile accident that occurred on March 31, 2004. On this date, appellant was traveling on Interstate 76, when her vehicle was struck from behind by defendant James J. Cray, Jr. ("Mr. Cray"), who was acting within the *Page 2 
course and scope of his employment with defendant-appellee, Northeastern Ohio University College of Medicine ("NEUCOM"). At the time of the collision, appellant was stopped in the right lane of the interstate due to the traffic flow. The collision propelled appellant's vehicle into the rear of the stationary vehicle in front of her. Appellant was transported to the emergency room of Akron City Hospital where she was treated and released the same day.
 {¶ 3} This personal injury complaint was filed in the Court of Claims on June 24, 2005. On August 16, 2006, appellant filed a motion for partial summary judgment as to liability. Said motion was granted on September 27, 2006. Thereafter, a damages trial began on April 12, 2007. On October 10, 2007, the trial court issued a judgment entry awarding appellant a total damages award of $15,205.72, which included, but was not limited to, past and future pain and suffering, plus the $25 filing fee paid by appellant. The judgment entry also ordered court costs assessed against NEUCOM.
 {¶ 4} On November 5, 2007, appellant filed a motion for assessment of court costs to include her expenses for the transcripts and videotapes of the depositions of her expert medical and dental witnesses as "court costs" to be paid by NEUCOM. The trial court denied appellant's motion via entry December 18, 2007.
 {¶ 5} Appellant filed her notice of appeal on November 8, 2007, and brings the following three assignments of error for our review:
 ASSIGNMENT OF ERROR NO. 1
 The trial court erred in delivering a disproportionately low judgment which was contrary to the manifest weight of the evidence. *Page 3 
 ASSIGNMENT OF ERROR NO. 2
 The trial court erred in composing its published decision by failing to prepare and separate precise findings of fact and precise findings of law as mandated by Civ. R. 52 and Werden v. Crawford (1982), 70 Ohio St.2d 122, 435 N.E.2d 424.
 ASSIGNMENT OF ERROR NO. 3
 The trial court erred in denying Appellant the recovery of expenses for transcripts and videos of the medical experts' depositions as court costs, as authorized by Ohio statutory provisions and case precedent.
 {¶ 6} In her first assignment of error, appellant contends the trial court's award of $15,205.72 was grossly inadequate and was against the manifest weight of the evidence. Therefore, appellant seeks a remand so the trial court may reassess a "more substantial monetary judgment" in favor of appellant. (Appellant's brief at 2.)
 {¶ 7} In reviewing a verdict, an appellate court cannot reverse the judgment of the trial court if that judgment is supported by competent, credible evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. However, if the judgment is against the manifest weight of the evidence and is so grossly inadequate that it shocks the conscience of the court, the judgment cannot remain undisturbed.O'Neil v. State (1984), 13 Ohio App.3d 320. See, also, Hohn v. OhioDept. of Mental Retardation and Dev. Disabilties (Dec. 14, 1993), Franklin App. No. 93AP-106; Hitch v. Ohio Dept. of Mental Health (Sept. 24, 1996), Franklin App. No. 96API01-92.
 {¶ 8} As this court stated in Hohn:
 An appellate review of the adequacy of a trial court's award for noneconomic damages, or pain and suffering, is difficult because no specific yardstick, or mathematical rule exists for determining pain and suffering. Fantozzi v. Sandusky Cement Prod. Co. (1992), 64 Ohio St.3d 601, 612; Carter v. Simpson *Page 4 
(1984), 16 Ohio App.3d 420, 423. Rather, the finder of fact makes a "human evaluation" of all the facts and circumstances involved. Fantozzi, supra; Flory v. The New York Central Rd. Co. (1959), 170 Ohio St. 185, 190. In reviewing the reasonableness of a pain and suffering award, a court may consider awards given in comparable cases as a point of reference, see Hancock v. Norfolk Western Ry. Co. (1987), 39 Ohio App.3d 77, 85, but ultimately must evaluate each case in light of its own particular facts. Id. Given the difficulty in calculating pain and suffering damages, reviewing courts generally defer such determinations to the trier of fact, Fantozzi, supra, at 612, and are reluctant to substitute their judgment. Hancock, supra, at 85. Indeed, in no other element of damages is there so wide a latitude for awards as in pain and suffering. Drayton v. Jiffee Chemical Corp. (C.A.6, 1978), 591 F.2d 352, 370.
 {¶ 9} Appellant contends the trial court's decision neglects to undertake any comparison of similar cases, and provides only a brief summary of appellant's complaints. Further, appellant asserts any weight assigned to Dr. Corn's opinion was in error because Dr. Corn based his opinion only on appellant's medical records without having personally examined her. In summation, appellant asserts the damages award was so low it shocks the conscience and must be reversed. To the contrary, NEUCOM asserts the trial court's judgment was based on competent, credible evidence going to all essential elements of the case, and, therefore, cannot be reversed as being against the manifest weight of the evidence.
 {¶ 10} In support of her position that the damages were inadequate in this case, appellant relies on Baxter v. Ohio Dept. of Transp., Franklin App. No. 02AP-537, 2002-Ohio-7023, and Spicer v. Armco Steel Corp.
(1974), 68 O.O.2d 314. We find neither of the cases analogous to the matter at hand.
 {¶ 11} In Spicer, the Twelfth District Court of Appeals determined a $15,000 damage award for past and future pain and suffering was inadequate for a 30-year-old *Page 5 
woman involved in a car accident. However, as a result of the accident, the woman was placed in intensive care for five days, suffered shock, a broken wrist, a broken leg, chest injuries, multiple rib fractures resulting in punctured lungs, and a permanently shortened right leg. InBaxter, this court reversed a trial court's award to the extent it failed to make an award for future economic damages. It was undisputed in Baxter, however, that the self-employed accident victim's brain injury symptoms were permanent, and for the most part, could not be treated. Because no witness testified the injured party's condition would significantly improve, even with aggressive treatment, this court held some future economic damages should have been awarded. As will develop more fully in the ensuing discussion, neither of the above-cited cases are applicable as the injuries in those cases vary dramatically from those present before us.
 {¶ 12} Appellant testified that while she was driving home from work on the day of the accident, she was stopped in traffic when she was struck from behind and forced into the vehicle in front of her. Appellant remembers nothing but hearing a "boom" and feeling a crushing feeling as if she had been hit in the nose. Appellant saw blood and when she looked in the mirror, she observed the center portion of her bottom lip was gone. Appellant testified she had pain in her nose, her head, her lower back, her left knee, and her left foot. The paramedics found appellant's bottom lip portion inside appellant's mouth, and because it retained some blood flow, it was able to be reattached at the emergency room.
 {¶ 13} Appellant testified that after the lip was sutured, it was sore and that "underneath the top of the lip was completely purple." (Tr. at 48.) When asked if the lip surgery was successful, appellant replied, "Yes. Cosmetically, I'm thrilled. There's still *Page 6 
some numbness and it's — you know, it's just dry." Id. at 47. Appellant also testified about experiencing lower lumbar pain, jaw pain, and headaches after the collision. Though stating she was not a "typical headache person" and did not experience chronic headaches prior to the accident, appellant explained that after the accident the back of her head hurt in such a manner as though it "felt like [her] brains were just going to come right out the back of [her] head." (Tr. at 55-56.) Appellant also described radiating pain present in her neck and shoulders and into her arms.
 {¶ 14} Appellant testified about numerous activities in which she engaged prior to the accident, such as skiing, dancing, biking, running, walking, and working outdoors. However, appellant explained at trial that since the accident, she is no longer able to do any of these activities. Joseph Donofrio, appellant's former fiancé, testified that prior to the accident appellant was very active and energetic, but now is unable to do a lot of things she used to like to do.
 {¶ 15} Other evidence presented to the trial court consisted of appellant's medical records and expert medical testimony. David Ash, DDS, first saw appellant for treatment on September 30, 2004, six months after the accident. At this time, appellant complained of left jaw pain. Dr. Ash concluded appellant had a traumatic contusion to the left temporomandibular joint ("TMJ") secondary to trauma originating with the March 31, 2004 accident. Dr. Ash advised appellant to be on a soft diet and to get an MRI. The MRI showed both joints were essentially normal; however, the left having "a little arthritic change." (Ash depo. at 14.) On cross-examination, Dr. Ash stated the MRI showed degenerative changes and that the condyle was slightly smaller on the left as compared to the right, and also that this condition was likely chronic and present prior to the *Page 7 
accident. Because of appellant's restricted range of motion, Dr. Ash prescribed physical therapy and a bite splint. Dr. Ash explained persons with this type of injury experience soreness and pain in the joint and restricted motion. Dr. Ash last saw appellant on June 8, 2006, at which time she stated "she was doing okay and that she's been wearing her splint." Id. at 19. On cross-examination, Dr. Ash agreed that a failure to seek treatment for a six-month period for this type of injury could slow the recovery process. Dr. Ash also explained that though he advised appellant on November 11, 2004 to have physical therapy, she did not return for physical therapy until February 20, 2006. Further, appellant did not return to have impressions made for her bite splint until October 11, 2005, and did not return until February 20, 2006 to have the bite splint seated.
 {¶ 16} John Pedersen, M.D., a plastic surgeon, first saw appellant on April 6, 2004, after appellant had been seen and provided care by one of his residents in the emergency room at Akron City Hospital. Dr. Pedersen opined the lip laceration was a result of the automobile accident. Though the lip laceration healed without complication and required no further revision, Dr. Pedersen stated that the scar, regardless of how small, is permanent.
 {¶ 17} Dr. Donich first saw appellant on March 16, 2006, almost two years after the accident in question. Appellant's chief complaint was neck pain that radiated toward both shoulders and the shoulder blade area. Appellant told him this began after the March 2004 accident. After reviewing the MRI, dated January 21, 2006, Dr. Donich diagnosed appellant with disc herniation at the C4-5, C5-6, and C6-7, with resultant stenosis. (Donich depo., at 14.) Dr. Donich went on to opine that the March 31, 2004 accident was the direct and proximate cause of the disc herniations and resultant stenosis. Dr. Donich *Page 8 
performed surgery on appellant in which he fused the affected vertebrae together. Because of the surgery, Dr. Donich opined appellant will experience intermittent pain and a permanent loss of motion in her neck.
 {¶ 18} Edmund L. Wymyslo, M.D., is a family physician working at Family Physicians, Inc. Appellant was initially seen at this facility on March 16, 2002, and appellant saw Dr. Sawyer. Dr. Wymyslo first saw appellant on August 8, 2002. After the accident, appellant presented to Dr. Wymyslo on April 2, 2004, at which time appellant described difficulty with number recall, fogginess in her thoughts, neck, midback and low back discomfort, a bruised left foot and a lip laceration. Dr. Wymyslo's diagnosis was lower lip laceration, cervicothoracic strain, lumbar strain, head contusion with mental status changes and left foot contusion. On May 17, 2004, Dr. Wymyslo stated that appellant reported to him that the discomfort with her neck and midback had "improved significantly," but that she was still experiencing some lower back pain. On March 14, 2005, Dr. Wymyslo noted the first complaints of appellant's headaches; however, at this time there were no complaints of low back pain. Though no neck complaints were made prior to the accident, after viewing the January 2006 MRI, Dr. Wymyslo concluded there were a number of degenerative disc changes in her cervical spine, and he could not state appellant's disc condition was a proximate result of the accident.
 {¶ 19} Robert Corn, M.D., a general orthopedic surgeon, did not personally examine appellant, but did review her medical records. The records available for his review were from Mercy Medical Center, Dr. Wymyslo, Dr. Ash, Dr. Pedersen, and Dr. Donich. In addition to viewing medical test results, Dr. Corn also read the depositions of Dr. Wymyslo and Dr. Donich. *Page 9 
 {¶ 20} Regarding appellant's TMJ complaints, Dr. Corn was of the opinion that because appellant's symptoms did not appear in any medical records until six months after the accident, it was not likely that those complaints were directly and causally related to the accident. Further, Dr. Corn opined to a reasonable degree of medical certainty that based on the records and tests performed, "the TMJ problems were not related to a singular incident of trauma that occurred at the end of March of `04." (Dr. Corn's depo., at 18.)
 {¶ 21} Dr. Corn also opined that the cervical disc condition and the surgical procedure that followed was unrelated to the March 31, 2004 accident. Dr. Corn based this opinion on the lack of documentation in appellant's medical records of neck complaints that spanned for an 18-month period, namely May 2004 to January 2006. According to Dr. Corn, in January 2006, "there was a degenerative disc disease at multiple levels with stenosis on the basis of arthritis and degenerative disc disease, which have absolutely no direct connection with a traumatic event that occurred almost two years before." Id. at 20.
 {¶ 22} The trial court was also presented with records from a chiropractor, Dr. Henderson, from January 2003. The records indicate appellant had low back discomfort, and moderate bilateral neck stiffness. According to the reports, appellant indicated she has experienced headaches which required treatment, right and left shoulder pain and stiffness, right arm pain and stiffness, upper back pain and stiffness, and TMJ (jaw) problems which have required treatment.
 {¶ 23} Our review of the evidence reveals differing opinions as to which of, and to what extent appellant's conditions were proximately caused by the March 2004 accident. *Page 10 
A determination of the weight of the evidence and credibility of witnesses is primarily for the trier of facts. Farmers Mkt. Drive-InShopping Ctrs., v. Magana, Franklin App. No. 06AP-532, 2007-Ohio-2653, at ¶ 34, citing State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. Great deference is afforded to the trier of fact, which has had the opportunity to view witnesses in person and to observe their demeanor, gestures and voice inflections. Seasons Coal Co., Inc.v. City of Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 24} Because there is no medical documentation regarding a number of appellant's complaints, appellant's credibility pertaining to when the symptoms began was at issue during the trial. Further, with the exception of the lip laceration, there was conflicting evidence regarding whether the March 2004 accident proximately caused a number of appellant's conditions and pain complaints. Additionally, there was evidence of some pre-existing complaints, as well as evidence pertaining to chronic and degenerative conditions.
 {¶ 25} Upon review of the evidence, we find there is competent credible evidence to support the trial court's judgment. Further, given the deference accorded to the finder of fact, we cannot say the trial court's damage award in this case is so inadequate as to "shock the conscience." Accordingly, we overrule appellant's first assignment of error.
 {¶ 26} In her second assignment of error, appellant contends the trial court erred in failing to make specific findings of fact and conclusions of law as required by Civ. R. 52 and Werden v. Crawford (1982),70 Ohio St.2d 122. Because of this, appellant contends she was prejudiced because she cannot determine upon what the trial court relied, nor can she determine whether the law was properly applied. In contrast, NEUCOM asserts *Page 11 
the trial court did address the evidence and does explain its relevance to the trial court's decision.
 {¶ 27} Civ. R. 52, states, in relevant part:
 When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.
 {¶ 28} In Werden, supra, the Supreme Court of Ohio reviewed a child custody matter in which the father was awarded permanent custody of the children. The mother filed a motion for permanent custody that was denied, and then filed a motion for visitation, which was also denied. The mother then filed, pursuant to Civ. R. 52, a request for findings of fact and conclusions of law. However, the trial court denied the request finding that such a request was not necessary under Civ. R. 52 when the parties were before the court on motions. The Supreme Court reversed. Noting the purpose of Civ. R. 52 is to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment, the Supreme Court held the rule was applicable to change of custody proceedings.
 {¶ 29} Indeed, the purpose behind the separate findings of fact and conclusions of law provided for under Civ. R. 52 is to aid appellate review of the trial court's decision and to clarify issues for potential res judicata and estoppel applications. Hanson v. Rieser (Nov. 9, 1999), Franklin App. No. 98AP-1390. However, if the "court's ruling or opinion, considered in conjunction with the record at trial, provides adequate basis upon which we may review the legal and factual issues upon appeal, there is substantial compliance with *Page 12 
Civ. R. 52, and, thus, no reversible error." Id., In re Fetzer (1997),118 Ohio App.3d 156. See, also, Ferrari v. Ohio Dept. of Mental Healthand Mental Retardation (1990), 69 Ohio App.3d 541, 544, citing Stone v.Davis (1981), 66 Ohio St.2d 74.
 {¶ 30} Initially, we note that here the record is void of any indication the trial court refused to issue, or denied a request for, findings of fact and conclusions of law. Instead, appellant contends that because she provided the court with proposed findings of fact and conclusions of law, this went "beyond a request" for the same, and contends the trial court "ordered" the parties to submit proposed findings of fact and conclusions of law. An entry of April 19, 2007, states the following:
 On April 12, 2007, this case came to trial on the issues of damages. At the close of the proceedings, the court ORDERED the parties to file proposed findings of fact and conclusions of law on or before May 11, 2007. The parties may file reply briefs on or before May 18, 2007.
 {¶ 31} A review of the transcript, however, reveals the following:
 [NEUCOM's counsel]: We had talked before about — it's my understanding that the Court does accept trial briefs, posttrial briefs.
 [Court]: Yes, rather than make a final argument.
 [NEUCOM's counsel]: We can put our closing arguments into it.
 [Appellant's counsel]: I intended to do that.
 [Court]: File statements of facts and conclusions of law.
 [Appellant's counsel]: And, your Honor, you would like to have proposed findings of facts and conclusions of law with our position statement? Is that how you prefer it? We're pleased to do it if that's what you want. *Page 13 
 [Court]: What do you mean by — I'm not sure I appreciate what a position statement is. Your argument?
 [Appellant's counsel]: Yes. A position statement-
 [Court]: Your argument?
 [Appellant's counsel]: Yes, would be one thing, but if you want — in fact, I think it's a good idea and I'm pleased to do it.
 [Court]: Maybe I'm using the statements of facts and conclusions of law loosely.
 [Appellant's counsel]: Yeah, when I think of it, I think of it as the formal type under the rule.
 [Court]: No, if you just want to make a statement of facts and then your conclusions of law and your argument in there, however it's comfortable for you all, that's fine. If you want to call it a brief, that's fine too. I'd just like to see what you think the facts are, because I have 12 pages, and see where we may differ, and then I will concentrate on those for sure, and the rest, if you all agree on them, I don't have to worry about them.
 [Appellant's counsel]: Sounds good.
(Tr. at 154-158.)
 {¶ 32} With the exception of the actual findings and conclusions filed by the parties, no other references to findings of fact and conclusions of law appear in the record. Thus, we conclude the record does not appear to contain a request pursuant to Civ. R. 52 for findings of fact or conclusions of law, and a denial of the same. Moreover, to the extent there was confusion prior to the trial court's final decision pertaining to the parties' and the court's reference to what each expected in terms of findings and conclusions, appellant could have filed a Civ. R. 52 request even after the trial court filed its judgment entry. See Civ. R. 52. *Page 14 
 {¶ 33} Even assuming we are presented with a specific request pursuant to Civ. R. 52 for findings of fact and conclusions of law, and a subsequent denial of the same, as noted previously, this court has held that a trial court's decision that recites various facts and legal conclusions satisfies the requirements of Civ. R. 52, where, when considered together with other parts of the record, it formed an adequate basis upon which to decide the legal issues on appeal.Ferrari, supra. Here, the trial court's decision contains a sufficient review of the pertinent facts and statements of law to permit appellate review of all issues raised by appellant.
 {¶ 34} For the foregoing reasons, appellant's second assignment of error is overruled.
 {¶ 35} In her third assignment of error, appellant contends the trial court erred in denying her request to treat her expenses for transcripts of deposition testimony and video deposition fees as court costs to be paid by NEUCOM. The trial court issued its judgment entry awarding damages on October 10, 2007. Said judgment entry stated, "Court costs are assessed against defendant." Id. at 3. On November 5, 2007, appellant filed her motion seeking to have assessed as court costs her transcript and deposition expenses for Drs. Donich, Pedersen, Wymyslo, and Ash, in the total amount of $2,389.88. NEUCOM opposed the motion, and on December 18, 2007, the trial court denied appellant's motion.
 {¶ 36} NEUCOM first suggests to us that this assignment of error is not properly before us as it pertains to a judgment entry filed after appellant filed her notice of appeal. However, regardless of whether or not appellant should have amended her notice of appeal to include this judgment entry, we find no abuse of discretion in the trial court's *Page 15 
denial of appellant's motion to assess transcript and deposition expenses as court costs to be paid by NEUCOM.
 {¶ 37} Civ. R. 54(D) states: "Except when express provision therefore is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." The Supreme Court of Ohio has stated that its "interpretation of Civ. R. 54(D) is that the phrase `unless the court otherwise directs' grants the court discretion to order that the prevailing party bear all or part of his or her own costs." Vance v. Roedersheimer (1992), 64 Ohio St.3d 552, 555. "`Costs are generally defined as the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action and which the statutes authorize to be taxed and included in the judgment.'" (Emphasis sic.) Williamson v. Ameritech Corp. (1998),81 Ohio St.3d 342, 343, quoting Benda v. Fana (1967), 10 Ohio St.2d 259, paragraph one of the syllabus.
 {¶ 38} Civ. R. 54(D) does not provide an absolute right for court costs to be awarded to the prevailing party. Brodess v. Bagent, Franklin App. No. 04AP-623, 2005-Ohio-20, at ¶ 5. Thus, even if the trial court could have included some of appellant's requested expenses as court costs, there is no mandate that it do so. A trial court's decision on a motion for attorney's fees and costs is typically reviewed on appeal for an abuse of discretion. Sherman v. Fifth Third Bank (1993),93 Ohio App.3d 63, 65. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Landis v. Grange Mut. Ins. Co. (1998),82 Ohio St.3d 339, 342.
 {¶ 39} Here, the trial court ordered that NEUCOM pay court costs, but declined to include as court costs those costs incurred by appellant that were associated with the *Page 16 
transcript and deposition costs of Drs. Donich, Pedersen, Wymyslo, and Ash. We find no abuse of discretion in the trial court's action. At issue were soft tissue injuries, a lip laceration, and a jaw injury. With the exception of the lip laceration, whether or not these conditions were proximately caused by the accident was a contested issue. While there was another contested condition, that of a deviated septum, appellant withdrew that claim on the first day of trial, rendering Dr. Pedersen's testimony largely irrelevant. Further, appellant has failed to establish a statutory entitlement to all of the expenses she seeks. As discussed, supra, "the subject of costs is one entirely of statutory allowance and control." Williamson, at 343, quoting State ex rel. Michaels v. Morse (1956), 165 Ohio St. 599, 607. Upon review, we do not find the trial court abused its discretion in denying appellant's motion to have various expenses assessed as court costs. Accordingly, we overrule appellant's third assignment of error.
 {¶ 40} For the foregoing reasons, appellant's three assignments of error are overruled and the judgment of the Court of Claims of Ohio is hereby affirmed.
 Judgment affirmed.
FRENCH, J., concurs. BROWN, J., dissents in part.